**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WESLEY MULLINAX, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>UNITED MARKETING GROUP, LLC, an Illinois limited liability company; and PERMISSION INTERACTIVE, INC., a California corporation,<br><br>       Defendants. | NO. 1:10-CV-03585-JEC<br><br>Class Action<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED MARKETING GROUP, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, COMPEL ARBITRATION AND STAY ALL PROCEEDINGS PENDING COMPLETION OF ARBITRATION.** |

# I.   <u>INTRODUCTION</u>

Plaintiff Wesley Mullinax ("Plaintiff") filed this putative class action against United Marketing Group, LLC ("UMG") and Permission Interactive, Inc. ("Permission Interactive") alleging that he was enrolled in two of UMG's subscription programs over the internet without his knowledge or consent.   He seeks the return of the monthly subscription fees.  His claim fails for three reasons.

First, Plaintiff lacks Article III standing.  UMG has refunded all of the subscription fees Plaintiff seeks to recover through this lawsuit.  Courts consistently have held that a case is moot when a defendant satisfies the plaintiff's demand for relief.  Because Plaintiff has received a full refund of the damages he seeks, his claim is moot and should be dismissed.

Second, and in the alternative, Plaintiff cannot establish the foundational prerequisite of his claims as a matter of law.  The necessary underpinning of all of Plaintiff's claims is that UMG's online enrollment process is deceptive.  But this contention is clearly and unequivocally refuted by the webpages through which Plaintiff enrolled.[1] Those webpages required Plaintiff to take three affirmative steps before incurring any charges, and provided detailed information confirming

---

[1]    As set forth herein and in Defendants' Request for Judicial Notice, these webpages are appropriately considered on a motion to dismiss.

that he was enrolling in subscription services. Several courts have recently dismissed putative class actions based on virtually identical online enrollment processes. The courts concluded they were "clear and easily understandable" and precluded the plaintiffs from stating claims that they were deceived into enrolling. The same result is appropriate here.

Third, and in the alternative, Plaintiff's claims are subject to binding arbitration. The Terms & Conditions governing Plaintiff's relationship with UMG require Plaintiff to submit all of his claims related to the services to arbitration.[2]

## II. FACTUAL ALLEGATIONS

### A. UMG's Subscription Services

UMG is an Illinois corporation that markets and sells various subscription products and services to consumers over the internet and through other means. (Compl., ¶¶ 8, 14-15; Declaration of Glenn Kowalski ("Kowalski Decl."), ¶ 3.) UMG markets and sells its products and services through its own websites, as well as websites operated by third parties, including Permission Interactive. (*Id*.) Two subscription services offered by UMG are Buyer's Edge and MyAdvisor. (Compl., ¶¶ 22-23; Kowalski Decl., ¶ 3.) Consumers who subscribe to Buyer's Edge and

---

[2] There are additional reasons why each of Plaintiff's claims separately fail. However, UMG chooses to only address the three independent reasons that effectively dispose of *all* of Plaintiff's claims.

MyAdvisor receive access to special discounts, savings and coupons offered by various retailers and third party benefit providers. (Compl., ¶16; Kowalski Decl., ¶¶ 3-6, Exs. A & B.) UMG charges a monthly subscription fee for these services directly to the subscriber's credit card account. (Compl., ¶¶ 18, 23; Kowalski Decl., ¶¶ 3-6, Exs. A & B.)

### B.   UMG's Enrollment Process

As confirmed by the webpages through which Plaintiff enrolled in Buyer's Edge and MyAdvisor, consumers must consent to enroll in UMG's subscription services. (Kowalski Decl., ¶¶ 4-6, Exs. A & B.) Consumers enrolling online must take three affirmative steps:

First, the consumer must enter her email address on a webpage advertisement. (*Id*.) Second, the consumer must reenter her email address. (*Id*.) Finally, after entering her email address twice, the consumer must affirmatively click a button consenting to the enrollment.   (*Id*.)

The following disclosure is displayed just above the boxes where the consumer enters her email address:

> By clicking the button below & entering my email as my electronic signature, I have read & agree to the Terms & Conditions, including the Offer Details below, I agree to enroll in [Buyer's Edge or MyAdvisor] & authorize that my name, address, & credit card information can be securely transferred to [Buyer's Edge or MyAdvisor] for billing and benefit processing. (*Id*.)

The same webpage through which consumers enroll also prominently identifies the Offer Details, and provides a hyper-link to Terms and Conditions. (*Id*.) The Offer Details display just below the button that consumers must click. (*Id*.) The Offer Details displayed on the Buyer's Edge and MyAdvisor enrollment pages did not differ in any material respect:

> OFFER DETAILS: Claim your $10 Cash Back Certificate, good within the first 90 days of membership even if you cancel, and all the many savings benefits of Buyer's Edge Free for 30 days for only $1. After the 30 days trial, unless you cancel, Buyer's Edge will automatically charge the $14.95 monthly membership fee to the credit card you provided today at the end of the 30 day period and each month thereafter as long as you remain a member. You can cancel your membership at any time by calling toll free- 1-888-326-7156. Enrollment subject to approval.

> OFFER DETAILS: Get your $25 Wal-Mart Gift Card, good within the first 90 days of membership even if you cancel, and all the many savings benefits of MyAdvisor for 30 days for only $1. After the 30 day trial, do nothing and MyAdvisor will automatically charge the $14.95 monthly membership fee to the credit card you provided today at the end of the 30 day period and each month thereafter unless you cancel. You can cancel your MyAdvisor membership at anytime by calling toll free 1-888-873-1669.

## C.     UMG's Arbitration Agreement

The Terms and Conditions on the Buyer's Edge website contains the following arbitration agreement:

> Arbitration. All legal issues arising from or related to your Membership and this Site shall be construed in accordance with the laws of the State of Illinois applicable to contracts entered into and

wholly to be performed within Illinois. Any controversy or claim arising out of or relating to this Agreement or your use of the Site shall be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA"). Any such controversy or claim shall be arbitrated on an individual basis, and shall not be consolidated in any arbitration with any claim or controversy of another party. The arbitration shall be conducted in Illinois and judgment on the arbitration award may be entered into in any state or federal court in Illinois having jurisdiction thereof. Notwithstanding the applicable law on the statute of limitations, demand for arbitration with the AAA must be filed within ONE (1) YEAR after the date the party asserting the claim first knows or reasonably should know of the act, omission or default giving rise to the claim; and there shall be no right to any remedy for any claim not asserted within that time period. (If applicable law prohibits a one-year limitations period for asserting claims, the claim must be asserted within the shortest time period in excess of one year that is permitted by applicable law.) The use of your Membership and this Site and the terms of this Agreement shall be governed exclusively by the laws of the State of Illinois and the Federal Arbitration Act, without regard to conflict of laws provisions. By using this Site and thereby agreeing to this Agreement, you hereby consent to the personal jurisdiction and venue in the state and federal courts sitting in the State of Illinois. [Kowalski Decl., ¶ 7.]

### D. Plaintiff Enrolls in Buyer's Edge and MyAdvisor

In September 2009, Plaintiff enrolled in Buyer's Edge and MyAdvisor after purchasing a product online from Permission Interactive. (Compl., ¶¶ 22-23.) Plaintiff necessarily followed the steps described above before being charged for Buyer's Edge and MyAdvisor. (Kowalski Decl., ¶¶ 4-6, Exs. A & B.) Copies of the exact webpages through which Plaintiff subscribed are attached hereto as Exhibits A and B. (*Id.*)

Plaintiff's credit card was charged $14.95 monthly for each subscription service from October 2009 through May 2010 (8 charges for each service). Plaintiff was billed a total of $239.20 for his subscriptions.   (Compl., ¶¶ 23-24.)

### E.     **UMG Fully Refunds Plaintiff's Subscription Fees**

On May 25, 2010, Plaintiff cancelled his subscriptions to Buyer's Edge and MyAdvisor through UMG's customer service department.  (Compl., ¶¶ 25-27; Kowalski Decl., ¶ 9.)  At that time, UMG refunded Plaintiff's credit card three months for each subscription ($44.85 for Buyer's Edge and $44.85 for MyAdvisor).  (*Id*.)  UMG subsequently credited all remaining subscription fees to Plaintiff's credit card ($74.75 for Buyer's Edge and $74.75 for MyAdvisor). (Kowalski Decl., ¶ 9.)

### F.     **Plaintiff's Allegations**

Plaintiff broadly alleges that he was enrolled in Buyer's Edge and MyAdisor without his knowledge, authorization, or consent.  (Complaint, ¶ 2.)  Plaintiff asserts seven claims: (1) Violations of the Uniform Deceptive Trade Practices Act; (2) Violation of the Fair Business Practices Act; (3) Breach of Contract; (4) Quantum Meruit/Unjust Enrichment (In the Alternative Breach of Contract); (5) Quantum Meruit/Unjust Enrichment; (6) Fraud in the Inducement; and (7) Conspiracy to Commit Fraud in the Inducement.

## III. PLAINTIFF'S CLAIMS ARE MOOT AND SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(1).

Plaintiff seeks an award of damages and restitution for moneys he allegedly paid without his authorization. But Plaintiff already has received a full refund of the all subscription fees he paid to UMG. His claim is therefore moot, and should be dismissed for lack of subject matter jurisdiction.

"A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination." *Goodman v. Sipos*, 259 F.3d 1327, 1332 n. 6 (11th Cir. 2001); *see also*, *Scarfo v. Ginsberg*, 175 F.3d 957, 960-61 (11th Cir. 1999), citing to *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Where a defendant challenges the court's subject matter jurisdiction, the Plaintiff bears the burden of proving that jurisdiction exists. *United States v. Tinoco*, 304 F.3d 1088, n. 18 (11th Cir. 2002).

Article III of the United States Constitution limits the jurisdictional authority of the federal courts to actual "cases" or "controversies." U.S. Const. art. III, § 2. This requires that both litigants have a personal interest in the case throughout its entirety. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "A case becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Reich v. OSHRC*, 102 F.3d 1200,

1201 (11th Cir. 1997), citing *Powell v. McCormack*, 395 U.S. 486 (1969).

Courts have consistently held that a case is properly dismissed as moot when a defendant satisfies the plaintiff's demand for relief. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake"); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3rd Cir. 1992) ("Settlement of a plaintiff's claim moots an action"); *Thomas v. Interland, Inc.*, 2003 U.S. Dist. LEXIS 27664 (N.D. Ga. 2003).

"Article III limitations imposed by the mootness doctrine necessarily apply to class actions." *Labora v. MCI Telecomm. Corp.* ("MCI"), 1998 U.S. Dist. LEXIS 23639, *6 (S.D. Fl. 1998). As the Eleventh Circuit explained:

> In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings the suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot.

*Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987). Stated another way, "if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 778 (2d Cir. 1994); *Rocky v. King*, 900 F.2d 864 (5th Cir. 1990) ("This Court generally has concurred

with the proposition that a purported class action is moot where the named plaintiff's individual claim became moot before class certification.")

Several district courts within this Circuit have applied these principles to facts similar to this case. In *Thomas v. Interland, supra,* 2003 U.S. Dist. LEXIS 27664, a purported class action seeking unpaid wages, punitive damages and injunctive relief, the defendant tendered plaintiff a check in the amount of $432.60, which satisfied his demand for unpaid wages. *Id*. at *3. The district court granted defendants' motion to dismiss. *Id*. at *10. The court reasoned that "[b]ecause [defendant] offered to satisfy Plaintiff's entire demand there is no dispute over which to litigate, and Count I of Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction." *Id*. at *9. The court also reasoned that "[a]s Plaintiff no longer has a live claim for recovery of regular and overtime wages under the FLSA, he no longer has standing to represent any putative class in a lawsuit based on such alleged violations." *Id*. at *10.

The Southern District of Florida reached a similar result in *Labora v. MCI*, *supra*, 1998 U.S. Dist. LEXIS 23639, a putative class action alleging improper and duplicative billing. *Id*. at *1. After plaintiff filed the case, MCI elected to credit plaintiff's account the full amount of the disputed charges, which totaled $1.52. *Id*. at *3. The Southern District of Florida granted MCI's motion to dismiss, holding

that the tender of credit "mooted Labora's own cause of action and renders him ineligible to represent the putative class. Because the only named plaintiff in this suit has no case or controversy, this case must be dismissed for lack of subject matter jurisdiction." *Id*. at *6-7. *See also Taylor v. XM Satellite Radio, Inc*., 533 F. Supp. 2d 1151 (N.D. Al. 2007) (dismissing consumer class action against satellite radio company for refund of subscription fees due to interrupted service as moot, where defendant offered plaintiff a credit of $1.00 to account for the damages resulting from the interrupted service).

Like these cases, UMG has already refunded all moneys that Plaintiff seeks through this action. Although UMG maintains that these charges were proper, UMG nevertheless elected to refund Plaintiff the full amount that he was charged for his subscription services. This full refund moots Plaintiff's claims, and precludes him from serving as a putative class representative.

That Plaintiff seeks injunctive relief, attorneys' fees, costs, and punitive damages does not save his claims from dismissal. Indeed, in *Thomas v. Interland, Inc., supra*, the plaintiff also sought punitive damages and injunctive and declaratory relief in connection with his claims for unpaid wages. 2003 U.S. Dist. LEXIS 27664, *2. This District held that tendering plaintiff his unpaid wages rendered all of his claims moot. *Id*. at *9.

In *Labora v. MCI.*, *supra*, the court likewise held that the plaintiff's request for interest, attorneys' fees and costs could not save his claims from dismissal. 1998 U.S. Dist. LEXIS 23639, *7. Specifically, the court held that "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Id.*, citing to *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990). Moreover, a "request for costs and interest does not create a case or controversy." *Id.*, citing to *Bank of Marin v. England*, 385 U.S. 99, 111 n.1 (1966) (dissenting).

Plaintiff no longer has a claim because he has received a full refund for the money he seeks. That means he can no longer represent the putative class. The Court should dismiss Plaintiff's Complaint with prejudice.

## IV.  PLAINTIFF'S CLAIMS ALL FAIL AS A MATTER OF LAW BECAUSE THERE WAS NOTHING MISLEADING OR DECEPTIVE ABOUT UMG'S ENROLLMENT PROCESS.

In the alternative, all of Plaintiff's claims should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's central theory is that UMG's online enrollment process is misleading and deceptive. (Compl., ¶¶38-39, 46-49, 52, 65-66, 77, 89.) But, as a matter of law, UMG's online enrollment process is not misleading or deceptive, as evidenced by the webpages through which Plaintiff subscribed. A motion to dismiss must be

granted where it is demonstrated that the plaintiff can prove no set of facts that would entitle him to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 558 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Such a motion is particularly appropriate where "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Board of Ed. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993); *Metal Morphosis, Inc. v. Acorn Media Publ., Inc.*, 639 F. Supp. 2d 1367, 1376 (N.D. Ga. 2009) (dismissing unfair competition claim on 12(b)(6) motion).

Several district courts recently dismissed claims almost identical to those alleged by Plaintiff. In *VistaPrint Corp. Marketing and Sales Practices Litig.*, 2009 U.S. Dist. LEXIS 77509 (S.D. Tex. 2009)[3] (multi-district litigation), plaintiffs brought putative class actions against VistaPrint alleging that they were "tricked into enrolling in membership programs" that resulted in "unauthorized charges to their debit or credit cards for monthly fees associates with these membership programs. . . " *Id*. at *4. Plaintiffs specifically alleged that VistaPrint "deceived them into entering their email addresses and clicking on an oval with the word 'Yes,' resulting in charges to their credit or debit cards." *Id*. at *5.

Attaching the webpages through which the plaintiffs subscribed, VistaPrint

---

[3] Affirmed, *Bott v. VistaPrint USA, Inc.*, 2010 U.S. App. LEXIS 17634 (5th Cir. 2010) (noting that the district court's opinion was "detailed" and "well-reasoned").

moved to dismiss all of plaintiffs' claims, arguing that the websites were not deceptive as a matter of law. *Id*. at *6. The court granted the motion because "as a matter of law, the webpages are not deceptive." *Id*.

The webpages at issue in *VistaPrint* are virtually identical to those at issue in this case. In *VistaPrint*, as in this case, after completing a purchase order for a product, the consumer was directed to a webpage providing the opportunity to enroll in a rewards program and receive $10.00 Cash Back. *Id*. at * 15. As with Buyer's Edge and MyAdvisor, to enroll, the consumer had to enter her e-mail address twice and click a button that said "Yes." *Id*. at *16. Above the space where the consumer entered her email address, the VistaPrint enrollment form included the following authorization:

> By clicking 'Yes' I have read and agree to the Offer Details displayed to the left and authorize VistaPrint to securely transfer my name, address and credit card information to *VistaPrint Rewards*, a service provider of VistaPrint.

*Id*. at * 17.

On the left of the webpage, VistaPrint's Offer Details provided the following additional information about membership enrollment:

> "Simply click 'Yes' to activate your trial membership and take advantage of the great savings that *VistaPrint Rewards* has to offer plus claim your $10.00 Cash Back. The membership fee of $14.95 per month will be charged by *VistaPrint Rewards* to the credit card you used today with VistaPrint after the 30-day FREE trial and then

automatically charged each month at the then-current monthly membership fee so long as you remain a member. Of course, you can call toll-free at 1-888-243-6185 and speak to a *VistaPrint Rewards* member representative within the first 30 days to cancel – you will have paid nothing and owe nothing. *Id*. at *18.

The court held that the "language is clear and easily understandable by anyone capable of making an online purchase of business cards." *Id*. at *19. Because "Plaintiffs' allegation regarding the deceptive nature of the webpages at issue is clearly and unequivocally refuted by the website pages themselves", the court dismissed all of plaintiff's claims. *Id*. at *14.

The court also rejected the plaintiffs' argument that their failure to read the webpage disclosures compelled a different result: "A consumer cannot decline to read clear and easily understandable terms that are provided on the same webpage in close proximity to the location where the consumer indicates his agreement to those terms and then claim that the webpage, which the consumer has failed to read, is deceptive." *Id*. at * 20.[4]

The Central District of California reached the same conclusion in *Baxter v.*

---

[4]    Citing *Pacholec v. Home Depot USA, Inc*., 2007 U.S. Dist. LEXIS 99338 (D. NJ 2007); *Tarallo-Brennan v. Smith Barney*, 1999 U.S. Dist. LEXIS 6787 (S.D. NY 1999). *See also Heidt v. Potamkin Chrysler-Plymouth, Inc.*, 181 Ga. App. 903, 905  (1987) (no liability under the Georgia Fair Business Practices Act where the plaintiff fails to exercise reasonable diligence in entering into a transaction; "It is not the intent of the FBPA to protect consumers from their own lack of diligence . . . .").

*Intelius, Inc.*, 2010 U.S. Dist. LEXIS 104218 (C.D. Cal. 2010). In *Baxter*, plaintiffs filed a putative class action alleging that defendant "enrolled Plaintiffs in a negative option monthly membership program without their knowledge." *Id*. at *2. Just as here and in *VistaPrint*: (1) consumers were given the option to enroll in the membership program after purchasing a product from a member site; (2) the enrollment webpage required the consumer to enter her email address twice, and click a button; (3) above the email entry box was a disclosure where the consumer consented to the offer details; and (4) the offer details explained that the cost of the membership would be automatically deducted from the consumer's credit card account until cancelled. *Id*. at *9-11. In dismissing plaintiffs' complaint with prejudice, the court reasoned that the "website was not deceptive as a matter of law" (*Id*. *13), as it required consumers "to take affirmative steps to accept and provides complete information about the results of those steps." *Id*. at *11. *See also, Ford v. Hotwire, Inc.*, 2007 U.S. Dist. LEXIS 98370 (S.D. Cal. 2007) (dismissing unfair competition claims based on allegedly misleading disclosures on webpage; "[T]he Court concludes that no reasonable consumer would be deceived and therefore plaintiff's complaint fails to state a claim for relief . . . .")

These cases are directly on point. The webpages that Plaintiff alleges are

deceptive are virtually identical to those in *VistaPrint* and *Baxter*.[5]  After

purchasing a product from a partner site, Plaintiff was directed to a webpage giving

him the option to enroll in UMG's membership programs.  In order to enroll in the

programs, Plaintiff had to enter his email address twice, and affirmatively click a

button to accept the Offer Details.  Just above the email entry box was the

following disclosure regarding enrollment:

> By clicking the button below & entering my email as my electronic
> signature, I have read & agree to the Terms & Conditions, including
> the Offer Details below, I agree to enroll in [Buyer's Edge or
> MyAdvisor] & authorize that my name, address, & credit card
> information can be securely transferred to [Buyer's Edge or
> MyAdvisor] for billing and benefit processing.

Just below the button the Offer Details for the respective services were disclosed:

> OFFER DETAILS: Claim your $10 Cash Back Certificate, good
> within the first 90 days of membership even if you cancel, and all the
> many savings benefits of Buyer's Edge Free for 30 days for only $1.
> After the 30 days trial, unless you cancel, Buyer's Edge will
> automatically charge the $14.95 monthly membership fee to the credit
> card you provided today at the end of the 30 day period and each
> month thereafter as long as you remain a member. You can cancel
> your membership at any time by calling toll free- 1-888-326-7156.

---

[5]  UMG has provided the Court with copies of the web pages through which
Plaintiff enrolled in the UMG services.  A document attached to a motion to
dismiss may be considered by the court if the document is central to plaintiff's
claim and undisputed.  *Horsley v. Fedlt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see
also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (same); *Lanfear v. Home
Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1359 (N.D. Ga. 2005) (same).  (*See*
UMG's Request for Judicial Notice.)

> OFFER DETAILS: Get your $25 Wal-Mart Gift Card, good within the first 90 days of membership even if you cancel, and all the many savings benefits of MyAdvisor for 30 days for only $1. After the 30 day trial, do nothing and MyAdvisor will automatically charge the $14.95 monthly membership fee to the credit card you provided today at the end of the 30 day period and each month thereafter unless you cancel. You can cancel your MyAdvisor membership at anytime by calling toll free 1-888-873-1669.

This language is "clear and easily understandable" by anyone capable of making an online purchase. *VistaPrint, supra*, 2009 U.S. Dist. LEXIS 77509 at *19. The webpage required Plaintiff "to take affirmative steps to accept [the membership terms] and provides complete information about the results of those steps." *Baxter, supra*, 2010 U.S. Dist. LEXIS104218 at *11. There is nothing misleading or deceptive about UMG's enrollment process.

UMG did not charge Plaintiff's credit card without his knowledge or consent. By taking three affirmative steps, Plaintiff consented to UMG's Terms and Conditions and Offer Details and "authorize[d] that [his] name, address & credit card information can be securely transferred to [Buyer's Edge or MyAdvisor] for billing and benefit processing." Plaintiff cannot avoid the inescapable import of these disclosures by claiming he did not read them. *See Heidt v. Potamkin Chrysler-Plymouth, Inc.*, 181 Ga. App. 903, 905 (1987) ("It is not the intent of the FBPA to protect consumers from their own lack of diligence.")

That UMG's enrollment process is not misleading or deceptive as a matter

of law is fatal to all of Plaintiff's claims. Each of Plaintiff's claims requires Plaintiff to establish that UMG engaged in some form of wrongful conduct. The singular wrongful conduct that Plaintiff alleges to support all his claims is that UMG's enrollment process is deceptive. (Compl., ¶¶38-39, 46-49, 52, 65-66, 77, 89.) Because UMG's enrollment process is not deceptive as a matter of law, the Court should dismiss Plaintiff's Complaint with prejudice.

## V. <u>PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION</u>

Because Plaintiff lacks standing and the enrollment process are not deceptive as a matter of law, the Court should dismiss his claims at this stage with prejudice and without further unnecessary litigation. In the alternative, Plaintiff's claims do not belong in this Court because they are subject to binding arbitration.

### A. <u>Choice of Law</u>

Georgia law recognizes that 'parties by contract may stipulate that the laws of another jurisdiction will govern the transaction", unless the law is contrary to Georgia public policy. *Manderson & Associates, Inc. v. Gore*, 193 Ga. App. 723, 389 S.E.2d 251, 254 (1989); *Velten v. Lippert*, 985 F.2d 1515, 1519 (11th Cir. 1993). The Parties agreed that "[t]he use of your Membership and this Site and the terms of this Agreement shall be governed exclusively by the laws of the State of Illinois and the Federal Arbitration Act, without regard to conflict of law

provisions." (Ex. C, ¶ 12.)  Thus, the Parties have agreed that the FAA and Illinois law would govern.[6]  The application of the FAA is not contrary to Georgia public policy.  *See Cappuccitti v. DirectTV, Inc.*, 2010 U.S. App. LEXIS 21348 (11th Cir. 2010) (applying FAA to enforce consumer arbitration agreement); *Pate v. Melvin Williams Manuf. Homes, Inc.*, 198 Bankr. 841 (Bankr. S.D. Ga. 1996) (same).

**B.**     **Plaintiff's Claims Are Covered By the Broad Arbitration Clause Contained in the Terms and Conditions.**

The FAA specifically provides that:

> if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.  [9 U.S.C. § 3.]

"The court's duty on a § 3 motion to stay is to determine whether [Plaintiff] was party to an agreement that contains a facially valid arbitration clause. Having done

---

[6]     Moreover, the FAA would govern the enforceability of the Arbitration Agreement regardless of the parties' choice of law provision.  The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . ." 9 U.S.C. § 2.  The Act defines "commerce" as "commerce among the several states." 9 U.S.C. § 1; *see also Jenkins v. First Amer. Cash Advance of Ga.. LLC*, 400 F.3d 868, 874 (11th Cir. 2005), citing to *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52 (2003).  From Georgia, Plaintiff enrolled in UMG's subscription services offered from Illinois.  This easily meets the "commerce" requirement.

so, our work is finished, and we may not consider arguments concerning the unfairness of the contract formation process or the validity of the entire agreement." *McIntyre v. Household Bank*, 216 F. Supp. 2d 719, 722 (N.D. Ill. 2002), citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

Federal law strongly favors the arbitration of disputes and the enforcement of arbitration agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001); *Randolph v. Green Tree Financial Corp.*, 531 U.S. 79, 89 (2000); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Jenkins*, *supra*, 400 F.3d at 874. The Supreme Court has emphasized that arbitration is also favored in consumer disputes: "We agree that Congress, when enacting this law [*i.e.* the FAA], had the needs of consumers, as well as others, in mind . . . [T]he Act, by avoiding the delay and expense of litigation, will appeal to big business and little business alike, corporate interests [and] individuals. Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995) (citations omitted, brackets in original); *see also, Cappuccitti*, *supra*, 2010 U.S. App. LEXIS 21348 (enforcing consumer

arbitration agreement in purported class action).

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996).  As the Seventh Circuit explained:  "The touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause."  *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l.*, 1 F.3d 639, 643 (7th Cir. 1993) (citation omitted).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H.., supra.*, 460 U.S. at 24-25; *AT&T Techn., Inc. v. Comm. Workers of Amer.*, 475 U.S. 643, 650 (1986).

The broad arbitration clause contained in the Terms and Conditions covers Plaintiff's claims.  The arbitration clause expressly covers "[a]ny controversy or claim arising out of or relating to this Agreement  . . . ." (Ex. C, ¶ 12.)  Plaintiff's claims all arise out of and relate to his subscriptions to UMG's membership services and the conditions of services provided by UMG.  Plaintiff alleges that he was enrolled without his consent, and did not receive a full refund when he requested one.  (Compl., ¶¶ 23-27.)  Plaintiff's claims subject to Arbitration.

"When a court concludes that all of the claims raised in a plaintiff's complaint must be submitted to arbitration, the court may dismiss with prejudice the plaintiff's complaint." *Coffey v. Kellog Brown & Root*, 2009 U.S. Dist. LEXIS 71428 (N.D. Ga. 2009), citing *Choice Hotels Int'l Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable").

## C. Plaintiff Cannot Establish that The Arbitration Agreement is Unenforceable.

The Supreme Court has recognized that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Cappuccitti, supra,*, 2010 U.S. App. LEXIS 21348, *11. Plaintiff bears the burden to establish that the arbitration agreement is not enforceable. *Green Tree Fin. Corp., supra*, 531 U.S. at 92; *Musnick v. King Motor Co.*, 325 F.3d 1255, 1258 (2003); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003). Whether applying Georgia or Illinois, Plaintiff cannot establish that the Arbitration Agreement is unenforceable.

First, Plaintiff's claim for fraud in the inducement does not forestall arbitration. The Supreme Court has specifically held that such challenges to a **contract as a whole** must be referred to arbitration. *See Prima Paint Corp., supra*,

388 U.S. at 403-04; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (fraudulent inducement claim must be resolved by arbitrator); *Driscoll v. Smith Barney, Harris*, *Upham & Co*., 815 F.2d 655, 659 (11th Cir. 1987).

Second, any challenge that the Arbitration Agreement is unconscionable also lacks merit. Several courts have recently upheld arbitration agreements containing class action waivers under Georgia and Illinois law. *Cappuccitti, supra*, 2010 U.S. App. LEXIS 21348 (district court erred in finding consumer arbitration agreement with class action waiver unconscionable); *Jenkins, supra*, 400 F.3d at 877-878 (same); *Powell v. Payday Loan Store of Ill*., 2010 U.S. Dist. LEXIS 104002 (N.D. Ill. 2010) (upholding class action waiver in consumer arbitration agreement); *Coffey, supra*, 2009 U.S. Dist. Lexis 71428; *Honig v. Comcast of Ga*., LLC, 537 F.Supp. 2d 1277 (N.D. Ga. 2008) (same); *Harris v. DirectTV Group, Inc*., 2008 U.S. Dist. LEXIS 8240 (N.D. Ill. 2008) (same).

Moreover, consumer arbitration agreements are no less enforceable simply because they are disclosed in on-line transactions. *See*, *In re RealNetworks, Inc. Privacy Litig*., 2000 U.S. Dist. LEXIS 6584 (N.D. Ill. 2000) (rejecting argument that on-line consumer arbitration agreement was procedurally unconscionable); *Forrest v. Verizon Communs, Inc*., 805 A.2d 1007 (D.C. Ct. App. 2002) (enforcing on-line arbitration agreement).

**D.** **Plaintiff's Claims Against Permission Interactive Must Also Be Arbitrated.**

Although Permission Interactive is not a party to the Arbitration Agreement, it may still be compelled to arbitration. First, a nonsignatory may be compelled to arbitration under ordinary agency and contract principles. *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1248 (11th Cir. 2008); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); *In re Oil Spill by Amoco Cadiz*, 659 F.2d 789, 795-96 (7th Cir. 1981). Plaintiff's *own* allegations show that UMG and Permission Interactive satisfy that test, as Plaintiff alleges that "Defendants acted in concert as business partners and through a common or joint enterprise. . . ." (Compl., ¶ 88.)

Second, a nonsignatory may be compelled to arbitration when the dispute subject to arbitration "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753, 757 (11th Cir. 1993); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984). The Eleventh Circuit has found that test satisfied where plaintiff

alleges that the signatories and non-signatories conspired and engaged in a scheme to defraud plaintiff. *Franklin*, *supra*, 177 F.3d at 948. Here, Plaintiff makes the same type of allegations against UMG and Permission Interactive, and refers to them interdependently. (Compl., ¶¶ 5, 6, 38-40, 45-47, 74, 81, 82, 84, 88-89.)

Accordingly, Plaintiff's claims against Permission Interactive are also subject to arbitration. Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Franklin*, *supra*, 177 F.3d at 947.

## VI.   <u>CONCLUSION</u>

This case does not belong in Court for three independent reasons. The Court should dismiss it with prejudice.

Respectfully submitted this 3rd day of December, 2010.

<div style="margin-left:3em">

 *s/William B. Hill, Jr.*
William B. Hill, Jr.
*Georgia Bar No. 354725*
williamhill@asherafuse.com
**ASHE, RAFUSE & HILL, LLP**
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia  30309-3232
Telephone:  (404) 253-6025
Facsimile:  (404) 253-6041

</div>

## CERTIFICATION OF COMPLIANCE

I hereby certify that, pursuant to Local Rule 7.1D, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED MARKETING GROUP, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, COMPEL ARBITRATION AND STAY ALL PROCEEDINGS PENDING COMPLETION OF ARBITRATION** has been prepared in Times New Roman, 14-point font, in conformance with Local Rule 5.1B.

*s/William B. Hill, Jr.*
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WESLEY MULLINAX, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>UNITED MARKETING GROUP, LLC, an Illinois limited liability company; and PERMISSION INTERACTIVE, INC., a California corporation,<br><br>      Defendants. | NO. 1:10-CV-03585-JEC<br><br>Class Action<br><br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that I have this 3rd day of December, 2010, served the

foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**

**UNITED MARKETING GROUP, LLC'S MOTION TO DISMISS**

**PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, COMPEL**

**ARBITRATION AND STAY ALL PROCEEDINGS PENDING**

**COMPLETION OF ARBITRATION** on the following via First-Class U.S. Mail:

John C. Robbins
Attorney at Law
2031 2nd Avenue North
Birmingham, AL  35203

Richard A. Freese
Nathan C. VanDerVeer
FREESE & GOSS, PLLC
2031 2nd Avenue North
Birmingham, Alabama 35203


*s/ William B. Hill, Jr.*
Counsel for Defendant