IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WESLEY MULLINAX, individually
and on behalf of all others
similarly situated,

      Plaintiffs,

v.

UNITED MARKETING GROUP, LLC and
PERMISSION INTERACTIVE, INC.

      Defendants.

CIVIL ACTION NO.

1:10-CV-03585-JEC

## ORDER AND OPINION

This case is presently before the Court on plaintiff's Motion for Relief [14]; defendant United Marketing's Motion to Dismiss, or, in the alternative, Motion to Compel arbitration [8]; defendant United Marketing's Requests for Judicial Notice [9, 35]; plaintiff's Request for Judicial Notice [19] and Motions to Strike [18, 38]; and defendant Permission Interactive's Motion for Joinder [31] and Motion to Dismiss [32].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion for Relief [14] is **GRANTED**. Defendant United Marketing's Motion to Dismiss, or, in the alternative, motion to compel arbitration [8] is **DENIED without prejudice**. Defendant

United Marketing's Requests for Judicial Notice [9, 35] are **DENIED**. Plaintiff's Request for Judicial Notice [19] is **GRANTED as unopposed**, and plaintiff's Motions to Strike [18, 38] are deemed to be objections and are **GRANTED**, as such. Defendant Permission Interactive's Motion for Joinder [31] is **GRANTED** and its Motion to Dismiss [32] is **GRANTED in part** and **DENIED in part.**

## I.   Background

This case arises from an internet negative-option subscription plan that allegedly enrolled individuals without their knowledge or consent. Plaintiff Mullinax purchased a wallet online through Permission Interactive, Inc. ("Permission Interactive"). (Compl. [1] at ¶ 1, 22.) Permission Interactive then allegedly submitted plaintiff's confidential credit card information to United Marketing Group, LLC ("United"). (*Id.* at ¶ 2.) Using plaintiff's credit card information, United then enrolled plaintiff in two different membership programs that billed him monthly charges for each program. (*Id.* at ¶ 3.) Plaintiff alleges that the transfer of his confidential information and his enrollment were done without his knowledge or consent. (*Id.* at ¶ 4.) Defendants are alleged to have perpetrated this same scheme on thousands of persons nationwide. (*Id.* at ¶ 5.)

2

Plaintiff commenced a purported class action in the State Court of Cobb County against defendants United and Permission Interactive. His Complaint consists of seven counts asserting a violation of Georgia's Uniform Deceptive Trade Practices Act, and of Georgia's Fair Business Practices Act, breach of contract, unjust enrichment/quantum meruit, fraud in the inducement, and conspiracy to commit fraud in the inducement. Defendant United removed the action to this court and timely filed a motion to dismiss [8], along with a related motion requesting judicial notice [9]. The time to file a response passed and the Court granted defendant United's motions as unopposed. (Order of January 24, 2011 [13].) In response to the Court's Order, plaintiff filed a Motion for Relief [14]. Defendant Permission Interactive has since filed a Motion to Join defendant United's Motion to Dismiss [31], as well as its own Motion to Dismiss [32].[1]

## II.  Motion for Relief

Plaintiff moves the Court to set aside its Order granting defendant United's Motion to Dismiss and Request for Judicial Notice

---

[1]  Defendant Permission Interactive filed an unopposed Motion to Join defendant United's Motion to Dismiss [31]. Defendant Permission Interactive's Motion is **GRANTED** and its Motion to Dismiss shall incorporate defendant United's Motion to Dismiss [8] in its entirety. For simplicity, the Court will reference defendant United separately from defendant Permission Interactive as Permission Interactive has filed its own Motion to Dismiss [32] on distinct grounds.

3

so that plaintiff may respond to these motions on the merits.
Federal Rule of Civil Procedure 60(b)(1) permits relief from a
judgment or order taken as a result of "excusable neglect."[2]
Determining whether a litigant's neglect is excusable is an
equitable task that requires consideration of a number of factors
in light of all the relevant circumstances. *Walter v. Blue Cross
& Blue Shield United*, 181 F.3d 1198, 1201 (11th Cir. 1999). These
factors include (1) the danger of prejudice to the opposing party;
(2) the length of the delay resulting from the neglect and its
potential impact on judicial proceeding; (3) the reason for the
delay, including whether it was in the reasonable control of the
party guilty of neglect; and (4) whether the party guilty of neglect
acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs.
Ltd.*, 507 U.S. 380, 395 (1993).

The relevant circumstances surrounding plaintiff's failure to
respond to defendant United's motion are as follows. After the
removal of plaintiff's complaint, the parties consented to giving
defendant United additional time to respond [6]. Defendant United
then filed its motion to dismiss and request for judicial notice [8,
9]. On December 17, 2010, the Clerk's Office gave notice to

---

[2]   "On motion and upon just terms, the court may relieve a
party or its legal representative from a final judgment, order, or
proceeding for the following reasons: (1) mistake, inadvertence,
surprise, or excusable neglect."

4

plaintiff's local counsel that he was not admitted to this Court (Letter from Clerk [10].)[3]

Plaintiff's other counsel notified defendant United about the lack of local counsel and requested additional time to respond to defendant United's Motion. (Ex. A, attached to Pl.'s Mot. for Relief [14].) Defendant United agreed. (Ex. B, attached to Pl.'s Mot. for Relief [14].) Despite their tentative agreement, the parties' attorneys did not finalize and submit the agreed-upon consent order prior to the Court's Order of January 24, 2011 dismissing defendant United from the suit.

The Court concludes that plaintiff's failure to respond under these circumstances was excusable neglect. Defendant United has suffered no prejudice as a result of plaintiff's neglect, a fact evidenced by defendant United's initial consent to the extended briefing period and its lack of opposition to the present motion. (Def. United's Reply Br. [26] at 4 n.2.) *See, Walter*, 181 F.3d at 1201-02 (giving weight to party's admission that no prejudice was suffered). There has also been no substantial delay resulting from the neglect, although the proceedings have been somewhat impacted by the additional expenditure of judicial resources to address plaintiff's tardiness. The Court also finds that the reason for

---

[3] This letter apparently never reached local counsel, as the Clerk's Letter was returned as undeliverable [15].

5

delay was not entirely in the reasonable control of the party guilty of neglect. Although removal was not completely unexpected, it left plaintiff without properly admitted local counsel. Plaintiff took prompt efforts to rectify the situation, acting at all times in good faith.

For the above reasons, the Court concludes that plaintiff's failure to respond constituted excusable neglect. *See Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996)(finding delay caused by miscommunication between two attorneys constituted "innocent oversight by counsel."); *Walter*, 181 F.3d at 1201-02 (finding excusable neglect where administrative oversight delayed filing of response to motion to dismiss). The Court therefore **GRANTS** plaintiff's Motion for Relief [14] and directs that the Order of January 24, 2011 dismissing plaintiff's case as to defendant United and granting the latter's motion for judicial notice shall be set aside. The Clerk is directed to reinstate defendant United in the present action. The Court now turns to the merits of defendant United's resurrected Motion to Dismiss [8].

## III. United's Motion to Dismiss

### A.   Plaintiff's Purported Lack of Standing

Plaintiff has claimed that it never authorized the charges to his credit card that are at issue. Defendant argues that because it has now directed the credit card company to issue a credit to

6

plaintiff for all monies charged to his credit card, plaintiff has achieved all relief that would be possible in this litigation and, accordingly, the action is moot.  Plaintiff responds that while this might be so if plaintiff were pursuing a garden variety individual action, there are exceptions to this principle when the plaintiff is instead pursuing a class action as a class representative.

Defendant is right in noting that federal courts may only adjudicate "cases" or "controversies."  U.S. Const. art. III, § 2. For the most part, when a litigant loses his personal interest in a case and there is no longer a claim for which a court can give meaningful relief, the action is moot and subject to dismissal for want of subject matter jurisdiction.  *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1245 (11th Cir. 2003); *Reich v. Occupational Safety & Health Review Comm'n*, 102 F.3d 1200, 1201 (11th Cir. 1997).  Further, a federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of litigation.[4]  *Goodman v. Sipos*, 259 F.3d

---

[4]   When a defendant attacks the factual basis for the existence of subject matter jurisdiction, the court may consider materials outside the pleadings to evaluate the existence of jurisdiction.  *Id.; Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).  The presumption of truthfulness no longer applies to a plaintiff's allegations, as under a 12(b)(6) motion to dismiss, and the plaintiff bears the burden of proving to the court that jurisdiction in fact exists.  *Scarfo v. Ginsberg*, 175 F.3d 957, 960-61 (11th Cir. 1999).  Thus, for the limited purposes of the standing inquiry, the Court will consider the evidence offered by

1327, 1332 n.6 (11th Cir. 2001).

Here, the defendant has presumably satisfied all of the plaintiff's individual demands for relief by refunding the money charged to his credit card. A case is properly dismissed as moot when a defendant satisfies the plaintiff's demand for relief. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992).

The mootness doctrine can also apply to class actions. *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987). Application of the doctrine to class actions has, however, been fraught with uncertainty. The Supreme Court long ago held that once a class has been certified, the subsequent mooting of the plaintiff representative's individual claim will not moot the action. *Sosna v. Iowa*, 419 U.S. 393, 401 (1975). Further, even if the class has not yet been certified, the tender to the named plaintiff of his own personal claims will not moot the action when there is *pending* before the district court "a timely filed and diligently pursued motion for class certification." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1051 (5th Cir. 1981)[5]; *Bishop's Prop. & Invs.,*

---

the parties to address defendant's attack on jurisdiction.

[5]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Zeidman* was

*LLC v. Protective Life Ins. Co.*, 463 F. Supp. 2d 1375, 1378 (M.D. Ga. 2006). Under these circumstances, courts indulge in a legal fiction whereby the certification is said to "relate back" to the filing of the complaint, for purposes of a standing inquiry. *Zeidman*, 651 F.2d at 1047; *Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 518 (M.D. Ala. 1983).

In this case, however, the defendant refunded plaintiff's credit card charges after the class complaint had been filed, but before the plaintiff had filed a motion for class certification. (*See* Pl.'s Resp. [16] at 5.)  Plaintiff urges the Court to expand the *Zeidman* exception to mootness to cover this situation.  The Eleventh Circuit has not addressed this situation or provided much guidance in this area since the *Zeidman* decision in 1981.  Recent persuasive authority from other circuits, however, suggests that a defendant's attempted refund of a plaintiff's money[6] before the

---

decided on July 27, 1981.

[6]  This case presents an additional wrinkle not found in most of the cases that have addressed this question.  Specifically, in most cases in which courts have considered whether a class action is mooted by the willingness of the defendant to pay off the entirety of the individual plaintiff's claim, that intention has been manifested by the defendant through a Rule 68 offer of judgment for the entire amount of potential damages at issue for the individual plaintiff.  In these cases, the plaintiff has refused the offer of judgment and seeks to proceed with the litigation.

Here, the defendant gave the plaintiff no choice, as it unilaterally caused a refund of plaintiff's money, through

plaintiff had filed a certification motion is not a dispositive fact in determining whether the case is now moot.

Specifically, the Third Circuit first recognized that a class action should not be considered moot merely because the defendant had attempted to pay off the individual plaintiff's claim after the filing of the class complaint, but prior to the filing of a motion for class certification. In *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004), the defendant had made a full Rule 68 offer of judgment six weeks after the plaintiff had filed his amended complaint. The Third Circuit acknowledged that most of the cases applying the relation back doctrine to defeat a mootness argument in a class action have done so after a motion to certify has been filed. Nevertheless, the circuit panel concluded that denominating the filing of a certification motion as the "bright line event" in this analysis "may not always be well-founded." *Id.* at 347. That is, the federal rules do not require certification motions to be filed with a class complaint and, in fact, do not encourage premature certification decisions. *Id.* Moreover, a rule allowing class plaintiffs to be "picked off" at an early stage in a putative

---

directions to the credit card company to charge-back, or credit, the particular charges. For purposes of this analysis, the Court will assume that this is a distinction without a difference, as the defendant has not argued that the manner in which it tried to moot the case makes a difference in the analysis.

class action may waste judicial resources by triggering successive suits by other plaintiffs. *Id.* at 345 (citation omitted).

Accordingly, the Third Circuit in *Weiss* concluded that the relation back doctrine could apply when a Rule 68 offer had been made and declined, even if no class certification motion had been filed, as long as the plaintiff could not be deemed to have unduly delayed in filing a motion. *Id.* at 348. As to figuring out whether a plaintiff has unduly delayed, the federal rules offer little guidance and, instead, any deadline for filing a class motion must be set by local rules or a scheduling order. *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1244 (10th Cir. 2011). Accordingly, when a Rule 68 offer has been made and rejected prior to the time that a class certification is due to be filed per the scheduling order, the relation back doctrine applies and the action is not deemed to be moot. *Id*. at 1250. *Accord*, *Pitts v. Terrible Herbst, Inc.*, —–- F.3d —–-, 2011 WL 3449473, at *11 (9th Cir. 2011)(where a defendant makes an unaccepted Rule 68 offer of judgment that would have fully satisfied the individual plaintiff's claim, the offer does not moot the case so long as the named plaintiff may still file a timely motion for class certification).

The Court finds the above authority to be persuasive and consistent with the rationale articulated by the former Fifth Circuit in *Zeidman*. Here, the local rules require that a motion for

11

class certification be filed within ninety days after the complaint has been filed unless a defendant has filed a motion to dismiss in lieu of an answer.  If the latter, the plaintiff must file his certification motion within thirty days after all defendants have filed an answer.  LR 23.1(B), NDGa.

In this case, 53 days after the complaint was filed, the defendant credited the plaintiff's credit card, without his consent, for the amounts he claimed. (See Pl.'s Resp. [16] at 5.)  No motion to certify class had been filed at that time, but no motion was yet due, as both defendants have filed a motion to dismiss and neither has yet filed answers.  As such, the Court declines to find the class action moot, even though plaintiff's personal claims have been rendered moot.   When  plaintiff  files  a  timely  motion  for certification, that motion will relate back to the filing of the complaint.[7]   Whether the mooting of plaintiff's own claims will render him an unsuitable class representative can await the briefing

---

[7]  As to defendant's reliance on district court opinions that might  be  contrary  to  the  above  conclusion,  the  Court  notes  the factual distinctions in some of those cases. See, e.g., Taylor v. XM  Satellite  Radio,  Inc.,  533  F.  Supp.  2d  1151  (N.D.  Ala. 2007)(dismissing class action as moot where defendant offered credit to every customer who was member of class, including plaintiff, and offer was made prior to certification). Thomas v. Interland, Inc., 2003 WL 24065651 (N.D. Ga. 2003)(dismissing action as moot when defendant offered to satisfy claim prior to filing of suit); Labora v. MCI Telecomm. Corp., 1998 WL 1572719 (S.D. Fla. 1998)(dismissing action  as  moot  when  defendant  credited  plaintiff's  account  and plaintiff never reported wrongful conduct before filing suit).

12

on a certification motion.  For now, defendant's Motion to Dismiss [8] for lack of subject matter jurisdiction is **DENIED**.

**B.   Motion to Dismiss for Failure to State a Claim**

Defendant also moves to dismiss plaintiff's complaint for failure to state a claim.  Although plaintiff's complaint alleges seven counts, defendant argues that the essential factual basis for each of these claims is whether defendant's online enrollment process is misleading and deceptive.  (Def.'s Br. [8] at 11.) Resolution of that question, as a matter of law, requires the Court to actually review the information contained in the enrollment process.  To aid this inquiry, both parties have submitted documents for the Court's consideration.

1.   The Various Submissions

Defendant United initially supported its motion to dismiss with the Declaration of Glenn Kowalski (Kowalski Decl. [8].)  The Kowalski Declaration includes three exhibits.  Exhibits "A" and "B" are purportedly screenshots of the webpages through which plaintiff allegedly enrolled in defendant's "Buyer's Edge" and "MyAdvisor" subscription programs.  Exhibit C purports to provide the terms and conditions of enrollment in defendant's "Buyer's Edge" program. (Ex. C, attached to Def.'s Mot. to Dismiss [8].)  In addition to the Kowalski Declaration, defendant United seeks judicial notice of these  enrollment pages.  (Def.'s Req. for Judicial Notice [9].)

13

Plaintiff has moved to strike, and also filed a notice of objection to the Kowalski Declaration and its attached exhibits. (Pl.'s Mot. to Strike [18]; Pl.'s Resp. to Def.'s Mot. to Dismiss [20].)

In responding to defendant United's Motion to Dismiss, plaintiff also requests judicial notice of four exhibits [19]. Exhibit A, attached to plaintiff Mullinax's Declaration [17], is a screenshot of United's webpage addressing customer assistance. Exhibit B is a copy of plaintiff Mullinax's bank records displaying the tender of payment to his account for the amounts defendant United charged.  Exhibits C and D are screenshots of the current enrollment pages used by defendant United for its "MyAdvisor" and "Buyer's Edge" subscription services. (Pl.'s Request for Judicial Notice [19].)  Defendant addresses some of these materials in its Reply Brief [26] in support of its motion to dismiss, but has not filed a notice of objection to strike these materials.  (Reply Br. [26] at 10-12.)

After briefing for defendant United's motion to dismiss was completed, defendant United filed a Notice of Errata [35].  In this Notice, defendant United informed the Court that Exhibits A and B attached to the First Kowalski declaration are, contrary to that declaration, not the webpages through which plaintiff enrolled in defendant's subscription programs.  To correct its error, defendant has submitted a Supplemental Declaration of Glenn Kowalski that

14

purports to authenticate two different screenshots of enrollment pages that plaintiff allegedly used. (Exs. D and E, attached to Kowalski Supp. Decl. [36].) Plaintiff again filed a Motion to Strike and an objection to these new exhibits [38].

### 2. Plaintiff's Motions to Strike

Federal Rule of Civil Procedure 12(f) permits the court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Motions to strike may be made only to pleadings. *Exceptional Mktg. Grp., Inc. v. Jones*, 749 F. Supp. 2d 1352, 1358 (N.D. Ga. 2010). A declaration in support of a motion to dismiss is not a pleading and an inappropriate target of a motion to strike. As an objection would be the appropriate vehicle to challenge these exhibits and as part of plaintiff's motion is described as an objection, the Court will construe plaintiff's Motions to Strike [18, 38] as objections. For the reasons that follow, the Court **GRANTS**, or sustains, plaintiff's objections to use of these documents [18, 38].

### 3. The Screenshots are not Subject to Consideration

In deciding a motion to dismiss, "[a] district court may take judicial notice of certain facts without converting [it]...into a motion for summary judgment." *Horne v. Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010). A fact may be judicially noticed when it is "not subject to reasonable dispute in that it is either (1)

15

generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Facts that are appropriate for judicial notice are those facts "that only an unreasonable person would insist on disputing." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

The enrollment pages submitted by defendant, otherwise known as defendant's Exhibits A, B, D, and E, are not subject to judicial notice. Each set of screenshots, purporting to reflect the enrollment process, have been changed, modified, and revised over time. *See In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1168 (S.D. Cal. 2010)(declining to take judicial notice of webpages that were changed, modified, and revised over time); *Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *3-*4 (N.D. Cal. Oct. 5, 2010)(declining to take judicial notice of screen shots that reflect discrepancies between old and new versions of webpage).

Defendant is also the sole source of this documentation.[8]

_____

[8] Defendant's passing argument that these exhibits are subject to judicial notice as public records is without merit. While public records can be subject to judicial notice, there is no indication that the screenshots are public records. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999)(distinguishing affidavits attached to motion to dismiss with public records issued by governmental agency).

*Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1261 (W.D. Wash. 2011)(declining to take judicial notice where webpages have been removed from the internet and now exist only within defendant's archives); *Jaso v. The Coca Cola Co.*, 2011 WL 3279202, at *5 n.5 (5th Cir. Aug. 1, 2011)(declining to provide judicial notice of information posted on nongovernmental website); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007)(declining to take judicial notice of private website). Thus, these exhibits are not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. § 201. *See also Van Tassell v. United Mktg. Grp., LLC*, —-- F. Supp. 2d —--, 2011 WL 2632727 (N.D. Ill. July 5, 2011)(declining to take judicial notice of screenshots offered by the present defendant for similar enrollment plans).

Further, as to the "incorporation by reference" doctrine, a court may review documents attached to a defendant's motion to dismiss without converting the matter into a summary judgment, if the document is (1) central to a plaintiff's claim and (2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). A document is "undisputed" when there is no dispute as to its authenticity. *Id.*

The enrollment pages are admittedly central to plaintiff's claim. The evolution of the enrollment process's webpage, however,

17

provides a reasonable basis to dispute the authenticity of these particular exhibits. Printouts of a website, standing alone, are not self-authenticating documents. *See In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004)("Printouts from a web site do not bear the indicia of reliability demanded for other self-authenticating documents under Fed. R. Evid. 902."). Kowalski's bare statements that he reviewed United's business records and is responsible for overseeing all compliance initiatives for United does little to establish his authority to authenticate this document. (Kowalski Decl. [8] at ¶¶ 1-2.) *Compare Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257 (W.D. Wash. 2011)(permitting incorporation by reference based upon senior manager's explanation of what screen shots were, where they were maintained in the normal course of business, how they related to the transaction at issue in the litigation, and the steps taken to regenerate the webpages so the court could review them in the form presented to plaintiffs).

This is particularly the case here as Kowalski was obliged to file a supplemental declaration after discovering that the first set of enrollment pages, contrary to his declaration, was incorrect. He offered little or no explanation as to how he became aware of the difference between the two versions. While the Court appreciates defendant's candor in correcting the record, this discrepancy further calls into question the authenticity of these exhibits.

18

Plaintiff's testimony also cannot authenticate these documents as he avers that he does not recall viewing these pages.  In sum, the accuracy and the authenticity of these enrollment pages are in dispute and cannot fall under the "incorporation by reference doctrine." *Van Tassell*, —–– F. Supp. 2d —––, 2011 WL 2632727, at *7; *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d at 1168 (declining to incorporate screenshots by reference where authenticity is challenged).[9]

The Court therefore **DENIES** defendant's Request for Judicial Notice [9, 35] and its request to incorporate these documents by reference into the complaint.  The Court sustains plaintiff's objections and **GRANTS** plaintiff's Motions to Strike [18, 38].  The Court **GRANTS as unopposed** plaintiff's Request for Judicial Notice [19].  Because defendant United's Motion to Dismiss [8] for failure to state a claim depends on an examination of enrollment pages that the Court has excluded from consideration, defendant's Motion to Dismiss for failure to state a claim [8] is **DENIED**.

Although these webpages submitted by defendant United do not meet the requirements of Federal Rule of Evidence 201 or the

---

[9]  That the accuracy and authenticity of these documents is in dispute distinguishes those cases on which defendant United relies, where the authenticity of the exhibits was undisputed.  *See In re Vistaprint Corp. Mktg. & Sales Practices Litig.*, 2009 WL 2884727, at *4 n.5 (S.D. Tex. Aug. 31, 2009); *Baxter v. Intelius, Inc.*, 2010 WL 3791487, at *2 (C.D. Cal. Sept. 16, 2010).

AO 72A
(Rev.8/82)

incorporation by reference doctrine, a properly authenticated iteration of this document will be essential to a determination of the issues in this case.  As the webpages proffered by defendant seem clear as to the relevant terms, they may well be fatal to plaintiff's claim, if proved to be authentic.  *See In re VistaPrint Corp. Mktg. & Sales Practices Litig.*, 2009 WL 2884727, at *4 n.5 (S.D. Tex. Aug. 31, 2009)(granting motion to dismiss complaint based on allegedly deceptive negative-option website), *aff'd Bott v. VistaPrint USA, Inc.*, 392 Fed. App'x 327 (5th Cir. 2010); *Baxter v. Intelius, Inc.*, 2010 WL 3791487, at *2 (C.D. Cal. Sept. 16, 2010)(same).  Accordingly, plaintiff shall bear this concern in mind, as the case proceeds.

### C. Arbitration

Defendant United moves, in the alternative, to compel the parties to submit to arbitration and stay the proceeding pending resolution of the arbitration.  Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Bell v. Atl. Trucking Co., Inc.*, 2009 WL 4730564 (M.D. Fla. Dec. 7, 2009).  These motions are also "factual attacks" because they challenge the existence of subject matter jurisdiction, based upon an extrinsic document, the arbitration agreement.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  Thus, the Court may

consider evidence beyond the allegations of the complaint.

The Federal Arbitration Agreement ("FAA") provides for stays of proceedings when a claim therein is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Before compelling arbitration, the court must determine whether the parties agreed to arbitrate the dispute in question. *Granite Rock Co. v. Int'l Bros. of Teamsters*, 130 S. Ct. 2847, 2855-56 (2010); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. App'x 782, 785 (11th Cir. 2008)(parties cannot be forced to submit to arbitration if they have not agreed to do so, and a district court, rather than a panel of arbitrators, must decide whether a challenged agreement to arbitrate is enforceable against the parties in question.).[10]  Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. *Magnolia*, 272 Fed. App'x at 785. To create a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability

---

[10]  Defendant argues that the FAA, along with Illinois law, should govern the dispute.  This choice of law provision, however, presumes the existence of a valid agreement.  The law of the forum, in this case Georgia, determines whether a binding agreement exists. *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005).

question, an unequivocal denial that the agreement has been made is needed, and some evidence should be produced to substantiate the denial. *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992). A district court considering the making of an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise. *Magnolia*, 272 Fed. App'x at 785.

Once determining that the parties agreed to arbitrate the dispute, the court must then decide whether "legal constraints external to the parties' agreement foreclose[] arbitration." *Scott v. EFN Invs., LLC*, 312 Fed. App'x 254, 256 (11th Cir. 2009)(citing *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)).

Plaintiff contends that no contract was ever made between himself and United, or, in the alternative, that plaintiff never agreed to the overall contract containing the arbitration provision because defendant's misrepresentations rendered his consent void. As to plaintiff's first position, the Court must decide whether there was an agreement between plaintiff and defendant to arbitrate. *Magnolia Capitol Advisors, Inc. V. Bear Stearns & Co.*, 272 Fed. App'x 782, 785 (11th Cir. 2008).

To support its claim for arbitrability, defendant submits

22

screenshots purporting to show a link to "Terms and Conditions"[11] where the arbitration provision is located.  (Kowalski Supp. Decl. [36] at Ex. D and E.)  These links indicate that the only way to enroll into its member programs is by entering an email address and acknowledging one's agreement to the Terms and Conditions. (Kowalski Decl. [8] at ¶ 4.)  Defendant construes the entering of one's email address under these circumstances to count as an electronic signature.  (Def.'s Reply Br. [26] at 14 n.9.)  Plaintiff counters that he does not recollect seeing "any of these documents or signing any of them in any way" and did not consent to, or authorize, enrollment.  (Mullinax Decl. [17] at ¶¶ 14, 7.)

Plaintiff's averment is an "unequivocal denial" that the agreement has been made.  *Chastain*, 957 F.2d at 854.  Plaintiff also states that he never received any of the benefits supposedly offered through the enrollment program.  (Mullinax Aff. [17] at ¶ 11.)

Defendant's statement that the only way one can become enrolled in its programs is by entering an email address, which in turn acknowledges the terms and conditions containing the agreement to arbitrate, is certainly plausible.  Plaintiff's assertion, however,

---

[11]   Defendant United provides the "Terms and Conditions" containing the arbitration language for only one of the subscription enrollment programs at issue in this litigation ("Buyer's Edge"). This gap in the evidence does little to establish that there is no genuine issue fact regarding the agreement to arbitrate.

23

sufficiently contradicts this version of the events to create a genuine question as to whether the parties agreed to arbitrate. Defendant United's Motion to Compel Arbitration [8] is therefore **DENIED without prejudice.**

For all of the above reasons, defendant United's Motion to Dismiss or Arbitrate [8] is **DENIED** in all regards.

## IV. Defendant Permission Interactive's Motion to Dismiss

Plaintiff alleges that after purchasing a wallet on defendant Permission Interactive's website, Permission Interactive provided plaintiff's credit card information to defendant United without disclosing that it would do so. Defendant United then repeatedly charged plaintiff's credit card without authorization. Plaintiff sues for violation of the Georgia Uniform Deceptive Trade Practices Act ("UDTPA"), violation of the fair business practices act, breach of contract, quantum meruit/unjust enrichment, fraud, and conspiracy to commit fraud. Defendant Permission Interactive moves to dismiss plaintiff's complaint in its entirety.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim for relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010)(quoting *Ashcroft v.*

24

*Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009)).  A complaint is "plausible" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wooten*, 626 F.3d at 1196.  In considering a motion to dismiss, a court should "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).  A properly pled complaint must contain more than an "unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. At 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### A.   The Voluntary Payment Doctrine

Defendant Permission Interactive argues that plaintiff's claim is barred by the voluntary payment doctrine. That is, by making payments for a period of time on a credit card account whose monthly statement reflected the charges at issue, the plaintiff cannot now file a claim based on these charges. Georgia statutory law provides that payments of claims are deemed voluntary and cannot be recovered, even if made through ignorance of the law, where all the facts were  known to the payer and there was no misplaced confidence

25

or no artifice, deception, or fraudulent practice used by the other party to obtain payment. O.C.G.A. § 13-1-3. A plaintiff seeking to recover payment where a payment was made by him bears the burden of showing that the voluntary payment doctrine does not apply. *Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282, 284 (2001). Georgia courts have applied this doctrine to contractually mandated payments. *Camafel Bldg. Inspections, Inc. v. BellSouth Adver. & Publ'g Co.*, 298 Fed. App'x 822, 823 (11th Cir. 2008).

Breaking these elements down, a plaintiff cannot recover his payments where all the facts were known to him at the time of the payment. *Cotton v. Med-Cor Health Info. Solutions, Inc.*, 221 Ga. App. 609, 611 (1996). Thus, a plaintiff seeking to recover must prove that his payment "was not voluntarily made because certain material facts were not known at the time of payment, or because a valid reason existed for its failure to determine the truth." *Applebury v. Teacher's Ret. Sys.*, 275 Ga. App. 194, 195 (2005). Further, Georgia courts have routinely applied the voluntary payment doctrine to preclude recovery of payments, even if the payer lacked actual knowledge of all the facts, as long as the payer had constructive knowledge of the material facts. *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1346 (N.D. Ga. 2009)(Cooper, J.).

Second, the voluntary payment doctrine will not apply if the

26

payment was "induced by misplaced confidence, artifice, deception, or fraudulent practice on the part of the person to whom the money is paid." *Cotton*, 221 Ga. App. at 611.  Third, "the payment must not have been made under an urgent necessity or for the other reasons specified in the statute." *Id.*

Before considering the above requirements, a preliminary issue exists as to whether plaintiff can be said to have made a "payment" to defendant.  Defendant Permission Interactive's argument proceeds from the underlying assumption that plaintiff's monthly payment of his credit card bill is the relevant "payment" under the voluntary payment doctrine or, alternatively, that the payments by the credit card company to defendant can be deemed constructive payments by plaintiff.  Defendant relies on *Spivey v. Adaptive Mktg., LLC*, 622 F.3d 816 (7th Cir. 2010) for the proposition that the voluntary payment of a credit card charge bars recovery where the plaintiff fails to "ascertain the factual basis of the charge." *Id.* at 823-24.  *Spivey*, however, applied Illinois law and defendant cites no Georgia authority for the proposition that paying a credit card extends the voluntary payment doctrine to the party making the underlying charge.

Plaintiff argues that the pertinent inquiry is the payment from plaintiff's credit card company to defendant United.  Once the automatic charge was made, defendant United was entitled to this

27

money, and plaintiff owed his creditor. Plaintiff notes that defendant United was able to return amounts charged directly to plaintiff's credit card, which shows that the relevant payments were made by the credit card company to defendant United.

Even assuming a payment by plaintiff, plaintiff contends that the first element, requiring actual or constructive knowledge of all material facts, has not been met. Regardless of whether plaintiff could be charged with constructive knowledge of the charges based on an investigation into his credit card bill, plaintiff notes he would not have necessarily known about the initial payment made by his credit card company to defendant United. That is, by the time plaintiff received his credit card bill reflecting such a charge, the payment to defendant United would have already been made.

Plaintiff argues that the second element, requiring that "the payment must not have been induced by misplaced confidence, artifice, deception, or fraudulent practice *on the part of the person to whom the money is paid*," has also not been met. *Cotton*, 221 Ga. App. at 611-12 (emphasis added). From the emphasized language above, defendant contends that plaintiff may only avoid the doctrine by showing some artifice, deception, or fraudulent practice by the credit card company (the person to whom the money is paid). The payment at issue, however, is the one from the credit card company to defendant United, which plaintiff alleges was the direct

28

result of defendants' fraudulent scheme.   Defendant Permission Interactive received its payment as soon as it was automatically charged to plaintiff's account.   According to this argument, whatever happened after that was between plaintiff and its creditor.

Plaintiff's argument appears rather technical.   Nevertheless, defendant, who is the movant here, has cited no Georgia law and its advocacy on this point is thin.   Accordingly, for now, defendants' Motion to Dismiss plaintiff's claims on the basis of the voluntary payment doctrine is **DENIED without prejudice**.

### B.   Fraud

Defendant Permission Interactive moves to dismiss plaintiff's claims arising from alleged fraud and conspiracy to commit fraud. It contends that all of plaintiff's claims arise from his allegations that defendants Permission Interactive and United made fraudulent statements and fraudulently omitted material facts on its website.   In Georgia, the elements of fraud are "(1) a false representation, (2) scienter, (3) an intention to induce, (4) justifiable reliance by the alleged victim, and (5) damage to the victim." *Georgia-Pacific Corp. v. Lieberam*, 959 F.2d 901, 907 (11th Cir. 1992); *Lehman v. Keller*, 297 Ga. App. 371, 372-73 (2009).   In a claim for conspiracy to commit fraud, a plaintiff[] must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. *Argentum Int'l, LLC v. Woods*, 280 Ga. App. 440,

29

444 (2006)(internal quotations omitted).   Federal Rule of Civil Procedure 9(b) requires that plaintiff "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).   "Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant['s] alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006)(internal quotations omitted).   "This means the who, what, when[,] where, and how." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).   *See also W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x 81, 86 (11th Cir. 2008)("(1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendant[] gains by the alleged fraud.").

Plaintiff alleges that defendants Permission Interactive and United were the parties perpetrating the fraud.   The fraud is alleged to consist of material omissions made on defendant Permission Interactive's website.   Plaintiff alleges that defendant Permission Interactive's website provided that he could purchase a wallet, but failed to disclose that defendant would transfer his credit card information to United to be charged for a membership

30

program.   This   omission   is   alleged   to   be   misleading   because
plaintiff   contracted   to   obtain   one   thing,   but   was   charged   for
something   entirely   different.   Plaintiff   discovered   this   fraud,
which   all   took   place   over   the   internet   on   defendant   Permission
Interactive's   site,   in   May   of   2010.   Prior   to   its   discovery,   the
fraud   had   been   ongoing   for   approximately   eight   months.   He   was
alerted   to   defendants   Permission   Interactive   and   United's
involvement   by   the   charges   on   his   credit   card   that   arose   after
purchasing   the   wallet   from   Permission   Interactive.

These   allegations   are   pled   with   almost   enough   particularity   to
meet   the   requirements   of   Rule   9(b).   Plaintiff's   allegations   are
thin,   however,   as   to   the   "precise   statements   or   misrepresentations
that   were   made."   Even   where   defendants'   fraud   is   based   on
omissions,   a   more   detailed   description   of   the   webpage   is   needed   to
plead   with   sufficient   particularity.   *Marolda v. Symantec Corp.*,   672
F.   Supp.   2d   992,   1001   (N.D.   Cal.   2009)("she   may   describe   the
contents   of   the   allegedly   false   representation   in   detail,   outlining
the   facts   supporting   her   information   and   belief,   or   she   may   simply
attach   a   copy   of   the   offer,   if   still   extant.");   *See Ferrington*,   2010
WL   3910169,   at   *6   (finding   description   of   misleading   webpages   that
included   reference   to   sequence   of   offer,   language,   and   visual
details   sufficient   to   plead   with   particularity).   Because   a   more
detailed   description   of   the   alleged   misrepresentations   and   omissions

31

would satisfy Rule 9(b), plaintiff shall have an opportunity to amend. *Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995)("Where a more carefully drafted complaint might state a claim upon which relief could be granted, the district court should allow the plaintiff to amend the complaint rather than dismiss it.").

Accordingly, defendant's Motion to Dismiss is **DENIED without prejudice**. Plaintiff shall file an Amended Complaint **by October 11, 2011**. To the extent plaintiff's other claims are based on allegations of fraudulent behavior, plaintiff shall have the opportunity to amend those claims as well. *See JPMorgan Chase Bank, N.A. v. Hayhurst Mortg., Inc.*, 2010 WL 2949573, at *3 (S.D. Fla. July 26, 2010)("[T]he particularity requirement in Rule 9(b) applies only to averments of fraud, although it does apply in whatever substantive or factual content fraud might arise.").

### C.   Breach of Contract

A claim for breach of contract requires that a plaintiff show the breach of a contract and damages. *Roland v. Ford Motor Co., Inc.*, 288 Ga. App. 625, 629 (2007). To establish the existence of a contract, the plaintiff must allege "subject matter of the contract, consideration, and mutual assent by all parties to all contract terms." *Id.* At 630.

Plaintiff alleges that he submitted credit/debit card

32

information to Permission Interactive to consummate the purchase of a particular good at specific price, which resulted in plaintiff and defendant Permission Interactive entering into a valid and enforceable contract for the particular good at the specified price. (Compl. [1] at ¶¶ 50-51.)  Plaintiff argues that he did not assent to the release of his credit card information, did not assent to any additional charges, and did not reasonably expect that the contract for purchase and sale would include any additional or undisclosed charges.  (*Id*. at ¶ 52.)  Defendant Permission Interactive is alleged to have materially breached the terms of this agreement by transferring plaintiff's confidential bank information without authorization. (*Id*. at ¶ 53.)   Plaintiff's allegations fail to state a claim for breach of contract.  The contract formed between the parties pertained to the purchase of a particular good at a particular price.  There is no allegation that defendant Permission Interactive did not deliver this as promised.  Thus, there is no breach.

Plaintiff's allegations that the agreement for a sale of goods somehow gave rise to implied promises regarding the use of its confidential information is speculative, at best.  The fact that plaintiff did not assent to certain behavior does not mean that defendant offered to keep such information confidential in the first instance.  Plaintiff may well have had an "expectation" that his

33

credit card information would have been kept confidential, but his unilateral expectation cannot form the basis of a material term of a contractual agreement.  While the law may afford a remedy for the misuse of confidential information, it does not lie in this cause of action.  Defendant Permission Interactive's Motion to Dismiss plaintiff's breach of contract claim [32] is therefore **GRANTED**.

### D. Unjust Enrichment

To state a claim for unjust enrichment under Georgia law, plaintiff must show that it conferred a benefit on defendant and that equity required defendant to compensate plaintiff for the benefit.  *SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*, 455 F. Supp. 2d 1347, 1373 (N.D. Ga. 2006)(applying Georgia law).  Plaintiff alleges that defendant Permission Interactive knowingly received a monetary benefit from plaintiff in the form of fees, extra business, kickbacks, and other value given by defendant United when Permission Interactive allowed United to obtain plaintiff's private credit card information.  (Compl. [1] at ¶ 57.)  The parties dispute whether this allegation should be construed as alleging the conferral of a *direct* or *indirect* benefit on defendant Permission Interactive. Whether Georgia law permits an unjust enrichment claim where the alleged benefit is conferred indirectly on a party appears to be an open question.  *Compare Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1290 (S.D. Ga. 2010)(Wood, J.)(declining to

34

dismiss unjust enrichment claim on basis that plaintiff conferred indirect benefit on defendant as Georgia law did not restrict unjust enrichment claims to direct benefits), *with Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007)(Pannell, J.)(granting summary judgment on unjust enrichment claim against third party who indirectly received a benefit because Georgia law did not provide for such a claim). *See also In re ConAgra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 697 (N.D. Ga. 2008)(not including Georgia among states where unjust enrichment claim requires direct benefit).[12] Pretermitting whether such a claim is available, the allegation that defendant Permission Interactive received "kickbacks" from defendant United implies that the money plaintiff paid to defendant United was given directly to defendant

---

[12] Although not cited by either party the Court notes that some Georgia authority suggests that a claim for unjust enrichment does require a direct benefit. *See Scott v. Mamari Corp.*, 242 Ga. App. 455, 458-59 (2000). In *Scott*, a company reconstructed a dam located on a real estate development but was not fully paid for its services. After being unable to recover from the developer with whom it had a contract, Scott filed suit against two of the development's creditors. In rejecting his claim for unjust enrichment against the creditors, the Court reasoned that they did not fall under the rule because "[n]either [bank] received the direct benefit of Scott's labor. And any indirect benefit to the Bank's collateral resulting from repair of the dam was only the natural by-product of all work performed on a financed real estate project." *Id.* at 458. *See also Stoker v. Bellemeade, LLC*, 272 Ga. App. 817 (2005)(rejecting unjust enrichment claim premised on theory that construction company's contractual work on portions of development increased market value of surrounding property, unjustly enriching property owners).

35

Permission Interactive as part of the defendants' scheme. Viewing plaintiff's allegations with a favorable eye, as the Court must on a motion to dismiss, this allegation plausibly states a claim that defendant Permission Interactive received a direct benefit from plaintiff and was thus unjustly enriched. Defendant Permission Interactive's Motion to Dismiss plaintiff's claim for unjust enrichment [32] is therefore **DENIED**.

> **E.   Quantum Meruit**

In order to recover in quantum meruit, a plaintiff must show "(1) the performance of services valuable to the defendants; (2) either at the request of the defendants or knowingly accepted by the defendants; (3) that the failure to compensate the plaintiff would be unjust; and (4) that the plaintiff expected compensation at the time it rendered the services." *Perry Golf Course Dev., LLC v. Hous. Auth.*, 294 Ga. App. 387, 394 (2008). Plaintiff does not allege that he provided services to defendant Permission Interactive or that he expected to receive compensation from Permission Interactive. He also does not respond to defendant Permission Interactive's argument on this ground. Defendant Permission Interactive's Motion to Dismiss as to plaintiff's quantum meruit claim [32] is therefore **GRANTED**.

AO 72A
(Rev.8/82)

<u>CONCLUSION</u>

For the above reasons, plaintiff's Motion for Relief [14] is **GRANTED**. The Clerk shall vacate the Court's Order of July 24, 2011 [13]. Defendant United's Motion to Dismiss, or, in the alternative, Motion to Compel arbitration [8] is **DENIED without prejudice**. Defendant United's Requests for Judicial Notice [9, 35] are **DENIED**. Plaintiff's Request for Judicial Notice [19] is **GRANTED as unopposed**, and plaintiff's Motions to Strike [18, 38] are **GRANTED**, to the extent this motion is construed as an objection. Defendant Permission Interactive's Motion for Joinder [31] is **GRANTED**. Defendant Permission Interactive's Motion to Dismiss [32] is **GRANTED in part** and **DENIED in part**.

Plaintiff shall file an Amended Complaint by **October 11, 2011**.

SO ORDERED, this <u>13th</u> day of September, 2011.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

37